(C. D. 2025)

NORDIC BAKING & IMPORTING CO., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided September 8, 1958)

*Lawrence & Tuttle* (*Barnes, Richardson & Colburn* by *George R. Tuttle* and *Joseph Schwartz* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Samuel D. Spector, William J. Vitale*, and *Sheila Schwartz Ziff*, trial attorneys), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

DONLON, Judge: Paragraph 1623 of the Tariff Act of 1930 exempts bread from import duty, subject to the proviso that "no article shall be exempted from duty as bread unless yeast was the leavening substance used in its preparation." The Annecy Protocol to the General Agreement on Tariffs and Trade, T. D. 52373, modified paragraph 1623 so as to provide free entry for hard crisp bread made from rye flour and not more than 5 per centum of wheat flour, if any, if leavened with yeast.

Merchandise, which was described in the invoice and entry papers as Rytak, a hard crisp rye bread, was imported from Canada in February 1955. The collector classified the merchandise under the paragraph 733 provision for biscuits, wafers, cake, cakes, and similar baked articles, and assessed duty in liquidation at 10 per centum ad valorem.

The record before us includes a sample of the imported merchandise Rytak, the testimony of two witnesses for plaintiff, a deposition that was introduced by defendant, and the record in *A. V. Olsson Trading Co., Inc.* v. *United States*, 33 Cust. Ct. 93, C. D. 1641. This record was incorporated on defendant's motion, over plaintiff's objection.

In the *Olsson* case, the litigated merchandise was called Ry-King, and it was described as "Crisp Bread Light Thin." (Another kind of Ry-King, darker in color, coarser in texture, and somewhat thicker than the "light" Ry-King, was included in the entry but, since the collector admitted it free of duty under paragraph 1623, the litigation did not involve the "dark" Ry-King.) The court held, in the *Olsson* case, that the light Ry-King was a "bread" within the provision of paragraph 1623, provided yeast was the leavening substance. On the record before it, the court held that yeast was not the leavening substance in the light Ry-King.

Defendant does not seriously contend that Rytak is not bread. There is testimony that Rytak is eaten as bread. The incorporated case held that the product there was bread, and defendant has sought to relate the instant merchandise to that product by its motion to incorporate the record. We hold that Rytak is bread.

That leaves for our decision the controverted issue as to whether yeast is the leavening substance in Rytak.

There is testimony of a chemist in the incorporated *Olsson* case to the effect that leavening is a chemical process and that, chemically speaking, rye flour can not be leavened by yeast. To make rye bread, other flours are added to the rye, according to his testimony. To be weighed by us against this chemical testimony, we have the testimony of two witnesses for plaintiff in this action. They are not chemists, but they had direct business experience with Rytak. One witness was employed, at or about the time of export of this merchandise, as a baker by Victoria National System of Baking, in Victoria, B. C., maker of the imported merchandise. He testified as to the actual Rytak baking process. The other witness is the principal owner of plaintiff corporation, with experience both in the merchandising of Rytak and the baking process.

There are some differences between the "light" Ry-King that was litigated in the *Olsson* case and the "dark" Rytak here, which are apparent from visual inspection of exhibits of the two articles. Ry-King is much lighter in color, its texture appears not to be as coarse, and it is somewhat thinner than Rytak.

It is our duty to interpret the legislative intention of Congress with respect to the merchandise which is before us in this litigation. Whatever significance there may be in the chemical testimony that was adduced on trial of the incorporated case, we are not easily persuaded that Congress considered it to be impossible for hard crisp rye bread to be leavened with yeast as the leavening substance and without the addition of nonrye flours. Certainly, the negotiators of the 1935 trade agreement with Sweden and of the 1950 Annecy protocol clearly specified that hard crisp bread was to be on the free list, under paragraph 1623, either if made solely from rye flour or if made from rye

flour and not more than 5 per centum of wheat flour, provided only (in either case) that yeast is the leavening substance. We are of opinion that this provision is not in contravention of the congressional intention which is expressed in paragraph 1623. The legislative history of paragraph 1623 supports our view.

Bread, without qualification, was on the free list in the Tariff Act of 1913. The Tariff Act of 1922 (paragraph 1522) added the yeast proviso, which is quoted, *supra*, and this proviso was carried forward in identical language into paragraph 1623 of the Tariff Act of 1930, the classification provision that is now before us for interpretation.

Following enactment of the yeast proviso in the Tariff Act of 1922, so-called Swedish or hard crisp rye breads were denied free entry under paragraph 1522, by action of several collectors. The Board of General Appraisers held both that yeast was the leavening substance and that the Swedish hard crisp rye breads involved in these litigations were bread and, hence, were entitled to free entry. *Pollack Weeks & Co.* v. *United States*, 45 Treas. Dec. 907, Abstract 46940 (1924) (Swedish health bread); *Swedish Produce Co.* v. *United States*, 46 Treas. Dec. 649, Abstract 47815 (1924), and *Swedish Produce Co.* v. *United States*, 47 Treas. Dec. 915, Abstract 48621 (1925) (Swedish hardtack); *C. L. Benson* v. *United States*, 47 Treas. Dec. 1019, Abstract 49155 (1925) (Spisbröd, Spisknäckebröd, and Delikatess Kuvertbröd); *G. W. Sheldon & Co.* v. *United States*, 48 Treas. Dec. 623, Abstract 49838 (1925) (Delikatess Kuvertbröd).

The Summary of Tariff Information, 1929, which was before Congress at the time the Revenue Act of 1930 was enacted, referred to such decisions. Information reported to Congress with respect to paragraph 1522 of the Tariff Act of 1922 included the following:

### BREAD (LEAVENED WITH YEAST)

\*     \*     \*     \*     \*     \*     \*

**Imports.**—In 1927, of the total imports, 68.5 per cent came from Sweden; 10.4 per cent from Canada; 9.3 per cent from Finland; 5.3 per cent from Germany. Imports from Sweden consist mainly of a hard, dark wafer, *which is yeast leavened, made from rye flour.* The bread usually comes packed in small paper cartons holding one-half to 1 pound. It is usually round, although some is rectangular in shape. Practically all are labeled "Swedish Bread," with an accompanying designation in Swedish such as "Spisbröd" or "Spisknäckebröd." Imports from Canada are mainly white breads at border points near large Canadian cities. \* \* \* [Emphasis added.]

\*     \*     \*     \*     \*     \*     \*

**Competitive conditions.** —Imports from Canada are mainly the ordinary white breads, and are of minor importance. Imports of Swedish bread compete directly with hard, unsweetened biscuits, crackers, and with unleavened bread. *Swedish bread* is used for similar purposes as these products, and resembles some of them in appearance. It *differs from most of the domestic products of this type in that it is leavened with yeast.* [Emphasis added.]

## DECISIONS

*Swedish health bread* shown to contain yeast as a leavening substance has been held exempt from duty under paragraph 1522. (Ab. 46940 and other decisions.) *Hard bread and hard baked biscuits* have been held free under paragraph 1522, rather than dutiable at 30 per cent under paragraph 733. (Ab. 47886.)

The tariff status of Swedish breads was the subject of considerable controversy before both the House and Senate committees responsible for the 1930 tariff bill.

A brief filed with the Committee on Ways and Means of the House of Representatives (printed at page 8080 of the Committee Hearings, 70th Congress, 2d session, volume 15) includes the following:

### PARAGRAPH 1522, SWEDISH BREAD

There is a rapidly developing industry in this country which uses American rye in the production of crackers. Section 733 of the present tariff law provides that all breads of a cracker class shall pay a duty, while breads containing yeast are on the free list. During 1928 about 2,000,000 pounds of Swedish bread made out of foreign rye was imported into this country free, simply because it contained a very small quantity of yeast. American manufacturers declare that this so-called Swedish bread should be classified as a cracker and made dutiable. We concur in this belief.

Representatives of certain domestic interests caused statements to like effect to be introduced, and these are printed on page 8195.

On page 8198, there is published a memorandum that was filed in behalf of American manufacturers of so-called Swedish bread, made, however, of American rye, and in this memorandum suggestion of an amendment was proposed, as follows:

We think it is a misinterpretation of paragraph 1522 to construe said paragraph to mean that every article leavened with yeast should be considered bread. As a matter of fact, approximately 2,000,000 pounds of foreign so-called Swedish bread of some 30 varieties were imported free into this country last year in competition with American-made products. We contend that bread as used in said paragraph 1522 means a light raised loaf bread such as is recognized in the United States as bread. We think paragraph 1522, above referred to, should be amended to read as follows:

"Bread, provided that no article shall be exempted from duty as bread unless yeast was the leavening substance used in its preparation, and *provided further, that bread to come within the provisions of this paragraph must be a light raised loaf, such as is commonly known in the United States as bread.*"

It will be observed that the first portion of said paragraph contains the present law, and that the portion in italics is the amendment or addition to said paragraph which we feel is necessary to protect the American manufacturers against the free importation of the thirty-odd varieties of these foreign so-called Swedish bread.

The Committee on Ways and Means did not go along with this suggestion. It did not recommend, nor did the House adopt, the proposed amendment to limit free entry to "light raised loaf" bread.

Paragraph 1623, as passed by the House, read the same as did its predecessor, paragraph 1522 of the 1922 act.

The Swedish bread controversy then went before the subcommittee of the Finance Committee of the Senate. (Hearings before a subcommittee of the Committee on Finance, United States Senate, 71st Congress, 1st session, volume 16.) One witness, who had not appeared at the House hearings, was concerned with competitive bread imports from Canada. The duty status of Swedish bread was touched upon in the following exchange, as reported at page 154 of the Senate hearings, *supra*:

MR. AUSMAN. I want to say that the Swedish rye bread manufacturers of this country were represented (at the House hearings), and that bread, which is an infinitesimal part of the bread used in this country, was taken off of the free list and put upon the same basis as crackers and other products like that. [Parenthetical explanation inserted for clarity.]

SENATOR WATSON. I think you are wrong about that, according to the House report, paragraph 1623, bread. It is to remain on the free list provided that no article shall be exempted from duty as bread unless yeast was the leavening substance used in its preparation.

The Finance Committee, however, recommended that paragraph 1623 be amended so as to incorporate the following limitation, inserted following the yeast proviso: "and unless it was light raised, and is commonly known as bread." (Senate Report No. 37, 71st Congress, 1st Session.) The Committee on Finance reported, at page 54, as follows:

Paragraph 1623.—Bread

The definition of bread has been revised so that the intention of the committee might be carried out that only ordinary light-raised bread such as is commonly used in the United States should be free of duty and not the various forms of so-called Swedish rye breads which resemble hard crackers in appearance and taste. These rye breads will automatically be provided for in paragraph 733 where they become dutiable as biscuits or crackers at 30 per cent ad valorem.

A further amendment to paragraph 1623, proposing a countervailing duty, was inserted and passed when the tariff bill was before the Senate. (Congressional Record, volume 72, part 6, p. 5931.)

The conflict between the House and Senate versions of paragraph 1623 of the 1930 tariff bill accordingly went to the conference committee to be resolved.

On these Senate amendments (867 and 868, having to do with paragraph 1623), the Senate receded. (House of Representatives Report No. 1892 conference report to accompany H. R. 2667.) The conference report recited, at page 104, as follows:

Amendments Nos. 867 and 868: Under the House bill, bread is exempted from duty if yeast was the leavening substance used in its preparation. The Senate amendment further limits this provision to such bread as is light raised, and is commonly known as bread, the effect of which is to make so-called Swedish bread and similar bread dutiable at 30 percent ad valorem under paragraph 733 of the

Senate bill; and amendment No. 868 makes bread dutiable in the case of imports from a country which imposes a tariff on bread imported from the United States; and *the Senate recedes on both amendments.* [Emphasis added.]

Pursuant to section 350 of the Tariff Act of 1930, the President, on July 9, 1935, proclaimed a trade agreement between the United States and Sweden (T. D. 47785), which contained the following provision:

| Tariff Act of 1930, paragraph | Description of articles | Rate of duty |
|---|---|---|
| 1623 | Hard crisp bread made from rye flour and not more than 5 per centum of wheat flour, if any, with yeast as the leavening substance. | Free |

The latest summary of tariff information, prior to the Annecy Protocol, is the 16-volume series issued by the Tariff Commission in 1948. Volume 16 of that series includes material concerning paragraph 1623. Bread is discussed at page 181, as follows:

### BREAD, YEAST-LEAVENED: HARD, CRISP RYE
### (PAR. 1623)

#### Tariff Status

PAR. 1623. Hard crisp bread made from rye flour and not more than 5 per centum of wheat flour, if any, with yeast as the leavening substance—such bread, which was free of duty under the Tariff Act of 1922, is free of duty also under the Tariff Act of 1930. Its duty-free status was bound in the trade agreement with Sweden, effective August 1935,[*] and in the Annecy agreement, which binding was not made effective on January 1, 1950.[**]

The following additional comment appears at page 182:

"Hard crisp rye bread," known also as Swedish bread, Swedish crisp bread, and health bread, is a dry, cracker-like, yeast-leavened bread or wafer made from rye. It is substantially higher in price than ordinary soft-loaf rye bread. In Sweden, where this bread originated, and where it is a common article of diet, it is made from a special variety of hard rye. In the United States this type of bread is consumed to a limited extent by people who are of Scandinavian descent, and by persons who eat it from considerations of health or special diet.

Specialists in the United States Department of Agriculture have reported that the manufacture of this type of bread in the United States has fallen off, owing to declining consumption. Statistics of production are not available, but estimates from trade sources place domestic production at about 12 million pounds annually. The United States product is not identical with the Swedish, owing to the use here of different varieties of rye, and probably also to differences in the machinery used and in the methods of manufacture. The domestic product has generally been lower in price than the imported.

United States exports of hard crisp rye bread, though not reported separately, are believed to be negligible or nil.

For many years before World War II imports of this type of bread, nearly all from Sweden, amounted to 1 or 2 million pounds annually. Though the imports

[*]Terminated June 30, 1950, T. D. 52505.
[**]Effective on and after April 30, 1950, T. D. 52462.

of hard crisp rye bread have been separately reported only since 1937, it is known that the imports of bread previously reported from Sweden consisted almost entirely of the hard crisp rye type. Imports ceased during the war and have not recovered; the total imports during the period 1946, 1947, and January–September 1948 amounted to only about 36,000 pounds, valued at about $7,000. Before the war nearly all of the imports came from Sweden, but imports from Sweden since the war have been negligible. The small quantities imported in 1947 and 1948 came mostly from Denmark and Norway.

We have recited this record in some detail, in order to dispose of the question of legislative intent with respect to hard crisp rye breads. It is clear to us that Congress understood not only that hard crisp rye breads could be leavened with yeast, but that, after careful consideration of conflicting viewpoints, Congress intended such breads to be on the free list *if they were leavened with yeast as the leavening substance*. The issue here is whether, on the record now before us, yeast is or is not the leavening substance of Rytak.

There is no disagreement that Rytak is leavened, nor that yeast is used. It appears to be defendant's claim that yeast is not the sole leavening "agent" and that steam is a leavening "agent" in the baking of Rytak. There is no testimony with respect to any other leavening "agent," save only yeast and steam and the oven or baking process.

Steam, even if it should be shown to be a leavening "agent" in the baking of Rytak, as defendant argues that it is, should not be regarded as a leavening "substance." Congress does not concern itself in paragraph 1623 with nonsubstantial leavening agents. It concerned itself with a leavening substance, and, if this leavening substance is yeast, the congressional test for free entry is met.

It appears from the record, and indeed it is well known, that the making of bread employs leavening agents, such as heat, dry or wet, and mechanical processes, such as mixing or beating, in addition to some leavening substance, such as yeast or baking powder. The process described in the record includes both a leavening substance and nonsubstantial leavening agents.

The error in defendant's position is shown in its brief. The issue is stated thus (p. 2):

> The question involved is whether or not yeast was the *leavening agent* used in the preparation of the articles herein. [Emphasis added.]

This, of course, is not the issue. The issue is whether yeast was the *leavening substance*. Nowhere does defendant argue that steam is a leavening substance.

The following excerpts from defendant's brief are typical:

> The basis of the Collector's classification is that steam is used as a *leavening agent* in the production of the Rytak herein. (p. 5.)

> It went into the oven ¼ inch thick and was still ¼ inch thick after baking. As the material did not fall, some *leavening agent* was responsible for the maintenance of the raising. (p. 7.)

Furthermore, this same witness disqualified himself from offering an opinion as to the *leavening agent* in Rytak. (p. 8.)

The record is bare of any testimony which might even tend to show that yeast is the *sole leavening agent.* (p. 9.)

* * * mere visual similarity is hardly a reliable guide in determining whether or not yeast is the sole *leavening agent,* * * *. (p. 9.)

Wherefore, we respectfully submit that plaintiff has failed to affirmatively establish that the merchandise herein was *leavened solely by yeast,* * * *. (p. 9.)

(Emphasis added in the above-quoted matter, except as to the word "sole" in the fourth quotation.)

It is not particularly helpful, although it does not control judicial decision, that plaintiff has lapsed into the same error, arguing in its brief that yeast is the *leavening agent* in Rytak. The language in which Congress expressed its intention is otherwise. The issue is what is the *leavening substance* in Rytak.

The arguments advanced by defendant would make it difficult to give meaning to the controversy with respect to Swedish hard crisp rye bread that was resolved by Congress in 1930 in favor of the free entry of that article. While nothing is before us save the issue as to Rytak, the arguments of defendant and the deposition on which it relies would seem to exclude any bread in which yeast was not the sole aid to leavening, or leavening agent. We do not easily assume that the deliberative acts of the legislature are meaningless.

A baker who baked Rytak testified as to the ingredients of Rytak. These ingredients include rye flour "first grade," water, salt, and yeast. The dough is mixed mechanically in an electric mixer, in large batches. From the mixer, the dough is put into a large steel trough, where it is left for about an hour or an hour and 20 minutes "until it rises up." It is then put into a cutting machine, called a hopper. After cutting, the dough passes on a belt between two rollers with "lots of pins on it," and these pins puncture holes in the dough. The dough is about a quarter-inch thick, and the pins are of that length. There follow operations of cutting the punched dough into circles, shoveling the circles onto racks, and pushing the loaded racks into a steam-proof box where it is left for anywhere from 5 to 10 minutes. The racks are then placed in ovens and the bread baked "until it turns brownish" at 450 degrees temperature. There was testimony also as to how much the dough rose or failed to raise during the post-mixing, steam, and baking processes. (R. pp. 7 to 17, incl.)

On the record before us, we hold that there is evidence that yeast and steam and oven baking all contributed to the leavening of Rytak. In that sense, all are leavening agents, or aids. We hold that steam and oven baking are not such leavening substances as Congress intended when it enacted paragraph 1623, and that yeast is such a substance and the only leavening substance in Rytak.

The protest is sustained. Judgment will be entered for plaintiff.